## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA,
## ORLANDO DIVISION

| | | |
|---|---|---|
| **VINCENT TRAPENARD,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No:  6:22-cv-660  _____ |
| v. | ) | |
| | ) | |
| **NATHAN CLESTER,** | ) | Judge:  _____ |
| | ) | |
| **NPU FLOORING LLC,** | **)** | |
| | ) | |
| **NOAH CLESTER,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CLAUDIA TELLES,** | ) | |
| | ) | |
| *Defendants.* | ) | |

_____
_

## COMPLAINT AT LAW FOR MONETARY DAMAGES
## AND INJUNCTIVE RELIF

The Plaintiff, VINCENT TRAPENARD, by and through counsel, KERSHER

SLEDZIEWSKI LAW, LLC, and COLE SADKIN (Pro Hac Vice admission pending)

complains of Defendants, NATHAN CLESTER, NPU FLOORING LLC, NOAH

CLESTER, and CLAUDIA TELLES, and in support thereof, states the following.

## <u>NATURE OF THE ACTION</u>

1.     Vincent Trapenard (herein referred to as "Trapenard" or "Investor") was contacted by Nathan Clester (herein referred to as "Clester" or "Scam Artist") through an online platform to solicit an investment in a bitcoin currency called "Ethereum" with an alleged group of investors.

2.     Upon transferring digital currency known as Ethereum to Clester, Clester converted the funds for his personal use and did not use the funds for their intended purpose. When Trapenard discovered this, Clester refused to return the Ethereum and ceased communications with Trapenard.

3.     Trapenard is entitled to compensatory damages in the form of monetary relief as compensation for the fraud and significant losses resulting from this scam.  In addition, in an effort to ensure the public is protected from Scam Artist injuring other similarly situated investors, Trapenard is entitled to injunctive relief in the form of freezing of accounts and providing certain accounting in order to assist with pending civil and criminal investigation.

4.     Scam Artist proffers that the investment was either lost, stolen, or somehow mishandled and is no longer available for return to Trapenard or invest on behalf of Trapenard.  Upon information and belief, Scam Artist has duplicated

this scam on other domestic and foreign investors.  In addition, Scam Artist has implicated family and friends in this scam by utilizing mistaken or forged identities.

5.      As a result of Scam Artist's bad faith and unfair and unlawful conduct, Trapenard (and presumably many others) have been prevented from accessing his supposedly protected assets.   Trapenard seeks compensatory, exemplary, and punitive damages where appropriate and allowed, and an injunction enjoining the continuation of Scam Artist's unlawful conduct.

## PARTIES

6.      Plaintiff or "Investor", Vincent Trapenard, is a French national.

7.      Defendant Scam Artist, Nathan Clester, is a Florida resident residing in Winter Park, Florida.

8.      Defendant NPU Flooring LLC, a Florida limited liability company, has a principal business office located at 100 Windsong Court, Lake Mary, FL 32746.  NPU Flooring, LLC is jointly owned by Nathan Clester and is an alter-ego utilized to convert investment funds.  NPU Flooring LLC has a registered agent of Legalinc Corporate Services, Inc., with a registered agent address of 5237

Summerlin Commons, Suite 400, Fort Meyers, FL 33907.

9.     Defendant Noah Clester is a Florida resident residing in Lake Mary, Florida.  Noah Clester is the brother of Scam Artist and is an alter-ego utilized to convert investment funds.

10.     Defendant Claudia Telles is a Florida resident residing in Orlando, Florida.  Claudia Telles is the girlfriend of Scam Artist and is an alter-ego utilized to convert investment funds.

## JURISDICTION  AND VENUE

11.     Venue is proper pursuant to 28 U.S.C. § 1391 in that: (a) Scam Artist resides in this judicial district, (b) a substantial part of the events giving rise to the claims set forth herein occurred in this judicial district, and (c) a substantial part of property that is the subject of the action is situated in this judicial district.

12.     This Court has personal jurisdiction over Scam Artist because: (a) Scam Artist resides within this jurisdiction, and (b) Scam Artist's breaches and tortious activity occurred within this jurisdiction.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13.     Bitcoin is a virtual currency that may be traded on online exchanges for conventional currencies, including the US dollar, or used to purchase goods

and services online.  Bitcoin has no single administrator or central authority or repository.

14.     Scam Artist, Nathan Clester, formed NPU Flooring LLC as a flooring installation company, and, upon information and belief, his sole profession is providing flooring contractor services to residential properties in and around Florida.

15.     On or about October 23, 2021, Scam Artist began corresponding with the Bitcoin investor community on Discord.  Discord is an online community used primarily for Bitcoin and other interested parties primarily because of its allowance for autonomy and limitations on recording of conversations.

16.     Scam Artist built a reputation within the Bitcoin community for his knowledge regarding similar investments.

<u>Introduction of Scam Artist to Investor</u>

17.     On or about October 23, 2021, Scam Artist approached Investor regarding his interest in purchasing a non-fungible token ("NFT") with an alleged group of investors using a cryptocurrency known as Ethereum.

18.     From October 23, 2021 through October 28, 2021, during the initial conversations between Investor and Scam Artist, he presented himself as a

businessman with knowledge and connections with the cryptocurrency and NFT environment who worked with other investors to collect and trade NFTs.

19.     In the course of the conversation between Investor and Scam Artist, he misrepresented where he attended business school, his work as an engineer, his relationship with his fiancé, and the house he had recently purchased and was remodeling.

20.     Scam Artist used personal details such as playing lacrosse in Ithaca, and attending business school at Tuck to establish a personal bond, and induce trust and familiarity with Investor.

21.     On or about October 24, 2021, Investor expressed interest to Scam Artist in joining a group purchase of an NFT by "Bullmarket Girlfriend."  Scam Artist proceeded to explain he was working with a group of five (5) similarly-situated investors to make the purchase and they would all be contributing cryptocurrency to a third-party wallet that would then be used to make the NFT Purchase.

22.     The cryptocurrency Investor was exchanging with Scam Artist was Ethereum, and each member of the alleged group would be contributing forty-one and one tenth (41.10) Ethereum towards the purchase of the NFT.

23.     During the Discord conversation with Scam Artist, other alleged members of the group were described to the Plaintiff including an alleged partner "Feng," who would handle the transfer of the wallet containing the cryptocurrency to the seller of the NFT.

Scam Artist Induces Investor Transfer

24.     On or about October 25, 2021, Scam Artist proceeded to make a series of communications regarding the timeline of the purchase and transfers of funds to pressure Investor into making the transfers without adequate time to independently review the deal.

25.     Starting on or about October 26, 2021, Scam Artist intentionally changed the timelines for depositing the coins from seventy-two (72) hours to forty-eight (48) hours to create a false sense of urgency to making the Ethereum transfers.  When Investor questioned the changing timelines, Scam Artist insisted it was a minor mistake on his part and Investor was being paranoid.

26.     In addition to pressuring the Investor by changing timelines for the cryptocurrency transfers and expected purchase date of the NFT, Scam Artist answered questions regarding the purchase vaguely or altogether refused to answer the Investor's questions.

27.     When Investor questioned promises Scam Artist made regarding the safety of the third-party wallet, and contradictory statements Scam Artist made regarding liquidity, Scam Artist would deflect the questions or tell Investor he was being paranoid, and the important thing was to make the transfers so that the NFT purchase could move forward.

28.     Scam Artist further intimated that if Investor did not make the transfers the investment partners would all lose their funds as a result of Investor's decision to withdraw from the deal.

Investor Provides Wire Transfer to Scam Artist

29.     Between October 25 and October 28, 2021, Investor wired two (2) separate Ethereum transactions to Scam Artist worth an estimated combined one hundred and sixty-five thousand dollars ($165,000).

30.     On or about October 28, 2021, after the second transfer to Scam Artist, Investor attempted to verify the purchase of the NFT by reviewing the metadata. Upon becoming aware that the purchase had not been made as represented, Investor attempted to contact Scam Artist.

31.     Investor demanded the return of his funds since the purchase was not made, at which time the Scam Artist ceased communications after taunting Investor.

Involvement of Other Scam Artists

32.     NPU Flooring LLC was formed in Florida and allegedly provides residential roofing contractor services.  Scam Artist is the principal owner.  Upon information and belief, NPU Flooring LLC is a shell company and alter-ego utilized by Scam Artist to convert investor-fraud proceeds.

33.     Noah Clester is the brother of Scam Artist.  Upon information and belief, Noach Clester is an alter-ego utilized by Scam Artist to convert investor-

fraud proceeds.

34. Claudia Telles is the girlfriend of Scam Artist. Upon information and belief, Claudia Telles is an alter-ego utilized by Scam Artist to convert investor-fraud proceeds.

<u>Damages Caused to Investor</u>

35.     After a lengthy and contentious argument regarding the return of the transferred funds, Scam Artist ceased communications with Investor and refused to respond to further requests for the return of the funds.

36.     This investment fraud has impeded Investor's ability to move forward with other cryptocurrency and Bitcoin investments, within the limited window of viability and profitability.  Upon information and belief, Scam Artist continues to communicate with potential investors on Discord in an effort to duplicate his efforts.

37.     Upon information and belief, Scam Artist actively and fraudulently converts investment proceeds to other accounts, possibly within his family and friends, in order to perpetuate the allegation that he somehow lost the funds or was the victim of a separate conversion or conspiracy.

**COUNT I**
**Conversion**

38.     Plaintiff re-incorporates and realleges paragraphs 1-37 as if full set forth herein.

39.     Plaintiff transferred valuable cryptocurrency to Scam Artist.

40.     Scam Artist knowingly and intentionally exercised control over the funds belonging to Plaintiff, denying Plaintiff access to his funds.

41.     Because of the unlawful restraint and retention of funds by Scam Artist, the rights of Plaintiff have been interfered with, and their funds are not accessible and presumed stolen. Scam Artist has converted those funds for his own personal use and distribution.

42.     Scam Artist has denied Plaintiff the use and control of his own property.

43.     As a result of the actions of Scam Artist, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
## Unjust Enrichment

44.     Plaintiff re-incorporates and realleges paragraphs 1-37 as if fully set forth herein.

45.     Plaintiff conferred a benefit upon Scam Artist by transferring valuable cryptocurrency into Scam Artist's care, who did not use the funds to purchase an NFT as promised.

46.     By Scam Artist's unfair, misleading, and unlawful conduct alleged

herein, Scam Artist has unjustly received and retained benefits at the expense of Plaintiff, including the funds transferred by Plaintiff.

47.     Under principles of equity and good conscience, Scam Artist should not be permitted to retain valuable funds belonging to Plaintiff that Scam Artist unjustly received as a result of Scam Artist's unfair, misleading, and unlawful conduct alleged herein without providing Plaintiff compensation.

48.     Plaintiff is entitled to restitution of, disgorgement of, compensation for the funds transferred to Scam Artist, and for any such other relief that this Court deems proper, as a result Scam Artist's unfair, misleading, and unlawful conduct.

## COUNT III
## Common Law Fraud

49.     Plaintiff re-incorporates and realleges paragraphs 1-37 as if fully set forth herein.

50.     Scam Artist made false statements of material fact regarding his credentials and connections within the NFT investment community and regarding his personal accreditations as a businessman and investor.

51.     Scam Artist made false statements of material fact that led Plaintiff to believe that other investors including Scam Artist were contributing funds towards the purchase of an NFT.

52.     At all times, Scam Artist was aware he was not an investor in the NFT community, and no other investors were contributing or involved in the purchase of the NFT.

53.     Scam Artist used these false statements in order to induce Plaintiff to make transfers of cryptocurrency to the control of Scam Artist.

54.     Plaintiff relied upon the statements and relationship built between himself and Scam Artist to make the transfers to Scam Artist in exchange for the purchase of the NFT.

55.   As a result of Plaintiff's reliance on the false and misleading statements of Scam Artist, Plaintiff has faced damages of an estimated one hundred and sixty-five thousand dollars ($165,000), in addition to attorneys' fees and costs.

## COUNT IV
## Preliminary and Permanent Injunction

28.    Plaintiff re-incorporates and realleges paragraphs 1-37 as if fully set forth herein.

29.    Plaintiff will suffer immediate and irreparable harm if Scam Artist does not return the funds transferred to him by Plaintiff.

30.    The value of the cryptocurrency Ethereum continues to fluctuate with the market, and by refusing to release the funds transferred, Plaintiff is denied the use of the Ethereum.

31.    Plaintiff is in need of injunctive relief to return Plaintiff to *status quo ante* and allow Plaintiff to access and regain control over his funds as he has demanded, without the interference of Scam Artist.

32.    Plaintiff has not adequate remedy of law that would serve to immediately compel Scam Artist to honor his obligations and honor Plaintiff's demands for the return of his funds.

33.    Plaintiff has a substantial likelihood of success on the merits of his claims. The funds he transferred to Scam Artist is inaccessible due to Scam Artist's mismanagement and fraud, and Plaintiff will not have access to his funds unless

Scam Artist is compelled to provide proper access and satisfy Plaintiff's demand for the return of his funds.

34.     Moreover, Scam Artist admitted to Plaintiff through their online communications that Scam Artist had defrauded Plaintiff.

35.     Returning the party to the *status quo ante* would not prejudice Scam Artist, as Scam Artist would merely be compelled to return the funds transferred to him by Plaintiff.

36.     Entering a temporary and permanent injunction would serve the public interest by preserving the international use of cryptocurrency in trading, and promoting the objectives of FinCEN (a division of the U.S. Department of Treasury).

37.     Plaintiff has a clear legal right to the relief sought herein.

## COUNT V
### FTC Act, 15 U.S.C. § 45 (a) Violations

38.     Plaintiff re-incorporates and realleges paragraphs 1-37 as if fully set forth herein.

39.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) (the "Act"), prohibits "unfair or deceptive acts or practices in or affecting commerce".

40.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices as prohibited by said Act.

41.     In numerous conversations with Plaintiff, Scam Artist misrepresented his identity as an investor and businessman.

42.     In addition to his personal misrepresentations, Scam Artist additionally misrepresented facts surrounding the purchase of an NFT with a group of similarly-situated investors that were fabricated and did not exist.

43.     These fabrications were presented to Plaintiff in order to induce his transfer of funds to Scam Artist.

44.     As a result of the fabrications by Scam Artist, Plaintiff made a transfer of funds to Scam Artist.

45.     Therefore, Scam Artist's representations as set forth in this Complaint are false and misleading and constitute deceptive acts or practices in violation of the Act.

## COUNT VI
## Violations of Section 10b of the Securities Exchange Act of 1934

46.     Plaintiff re-incorporates and realleges paragraphs 1-37 as if fully set forth herein.

47.     Rule 10b-5 states: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, (a) to employ any device . scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

48.     Scam Artist acted at all times with the intent to receive transferred funds from Plaintiff without the intent to make any NFT purchases for investment purposes, or personal control.

49.     Scam Artist intentionally misled Plaintiff regarding Scam Artist's credentials and connections in order to lure Plaintiff into a sense of security regarding the NFT purchase.

50.     As a result of the fabrications by Scam Artists, Plaintiff made a transfer of funds to Scam Artist.

51.     Therefore, Scam Artist's representations as set forth in this Complaint are in violation of Rule 10(b)-5 of the Securities Exchange Act of 1934.

Dated:  April 4, 2022                    Respectfully Submitted,

                                         VINCENT TRAPENARD

                                         /s/ Junilla Sledziewski
                                         Junilla Sledziewski
                                         Kershner Sledziewski Law, LLC
                                         200 N. LaSalle St., Suite 1550
                                         Chicago, IL 60601
                                         Ph  (312) 252-9777
                                         Fla. Bar. No. 072043
                                         junilla@kslawchicago.com

                                         By:  /s/ Mason Cole
                                         COLE SADKIN LLC
                                         Mason S. Cole
                                         Dean Tatooles
                                         Vani Vedam
                                         Mark Johnson
                                         1652 W Belmont Ave, Ste 1
                                         Chicago, Illinois 60657
                                         T: (312) 548-8610
                                         F: (312) 372-7076
                                         Firm ID: 49001
                                         mcole@colesadkin.com
                                         *Pro Hac Vice Admission Pending*